UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| ROBERT L. JENSEN JR.,<br><br>               Plaintiff,<br><br>    vs.<br><br>ANDREW M. SAUL, COMMISSIONER<br>OF SOCIAL SECURITY;<br><br>             Defendant. | 3:18-CV-03019-DW<br><br>ORDER |

## INTRODUCTION

On November 13, 2018, Claimant Robert L. Jensen, Jr. filed a complaint appealing the final decision of Andrew M. Saul, the current Commissioner of the Social Security Administration, finding him not disabled. (Doc. 1). Defendant denies Claimant is entitled to benefits. (Doc. 15). For the reasons stated below, Claimant's appeal of the decision of the Commissioner (Doc. 1) is denied.

## FACTS AND PROCEDURAL HISTORY

On July 16, 2015, Mr. Jensen filed the present application for Social Security disability benefits, alleging an onset of disability date as of December 10, 2013, arising from bipolar disorder, depression, and anxiety. (Doc. 24 at p. 2; AR at p. 12). An Administrative Law Judge ("ALJ") held a hearing on December 6, 2017. (Doc. 24 at p. 2). At the hearing, testimony was received from Mr. Jensen, Mary Jensen (Mr. Jensen's mother), and Dr. David Perry, a

vocational expert ("VE").  Mr. Jensen was represented by counsel at the hearing.  On February 27, 2018, the ALJ issued a written decision finding Mr. Jensen was not disabled under the Social Security Act ("the Act").  Id.  Mr. Jensen subsequently sought appellate review; his request was denied, making the decision of the ALJ final.  Id.  It is from this decision that Mr. Jensen timely appeals to this court.

The issue before this court is whether the ALJ's decision of February 27, 2018, that Mr. Jensen is not disabled under the Act, specifically the ALJ's finding that "there are jobs that exist in significant numbers in the national economy" that Mr. Jensen can perform considering his age, education, work experience, and residual functional capacity ("RFC"), is supported by substantial evidence on the record as a whole.  (Administrative Record [hereinafter "AR"] at p. 19-20).  See also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was committed.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v.

Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision "'merely because substantial evidence would have supported an opposite decision.'" Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration ("SSA") established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation

does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) Whether the claimant is presently engaged in a "substantial gainful activity";  (2) whether the claimant has a severe impairment – one that significantly limits the claimant's physical or mental ability to perform basic work activities;  (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience);  (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143–44 (8th Cir. 1998).  See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits).

The ALJ applied this five-step sequential evaluation required by the SSA regulations.  (AR at p. 10-20).  At step five of the evaluation, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Jensen can perform in light of his age, education, work experience, and RFC.  (AR at p. 19).  Accordingly, the ALJ found that Mr. Jensen is not disabled.  (AR at p. 20).

## DISCUSSION

Mr. Jensen argues the final decision of the Commissioner is inconsistent with the Act, policy and regulations, and applicable case law.  (Doc. 23 at p. 12).  Further, he argues the Commissioner's findings of fact are not supported by substantial evidence on the record as a whole.  Id.  Specifically, Mr. Jensen

identifies the following four issues: (1) whether the ALJ failed to give appropriate weight to the medical opinions of Dr. Ulises Pesce, the treating physician; (2) whether the ALJ failed to incorporate the opinions of Dr. Pesce, MD and Nurse Dione Rowe, DNP, QMHP for time periods before the date of last insured status and from the date last insured forward; (3) whether the ALJ failed to incorporate the moderately limited areas of function noted by Dr. Pesce into the hypothetical question posed to the VE; and (4) whether the ALJ failed to apply appropriate case law when determining the credibility of Mr. Jensen's subjective allegations of his physical and mental condition as to his limitations, restrictions, and work activity. Id. at p. 13. Accordingly, Mr. Jensen urges this court to find him disabled and reverse and remand the case for a calculation of social security benefits.

**STEP ONE**

At step one, the ALJ determined Mr. Jensen "has not engaged in substantial gainful activity since December 10, 2013, the alleged onset date." (AR at p. 12).

**STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). Additionally, an impairment is not severe if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

The ALJ determined Mr. Jensen suffered from the following severe impairments: bipolar disorder, depression, and anxiety. (AR at p. 12). As part of this finding, the ALJ determined "[t]he above medically determinable impairments significantly limit [Mr. Jensen's] ability to perform basic work activities . . . ." Id.

**STEP THREE**

At step three, the ALJ must determine whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirements of 20 CFR § 404.1509, the claimant is considered disabled. A claimant has the burden to show that his impairment meets all of the listing's specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."

Id.  "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present *medical findings* equal in severity to all the criteria for the one most similar listed impairment."  Id. at 531 (emphasis added).

The ALJ determined that Mr. Jensen "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1."  (AR at p. 13).  Therefore, the ALJ found the "severity of [Mr. Jensen's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06."  Id.  The qualifications for Listing 12.04 are as follows:

**12.04 Depressive, bipolar and related disorders (see 12.00B3), satisfied by A and B, or A and C:**

**A.  Medical documentation of the requirements of paragraph 1 or 2:**
  1. Depressive disorder, characterized by <u>five</u> or more of the following:
     a. Depressed mood;
     b. Diminished interest in almost all activities;
     c. Appetite disturbance with change in weight;
     d. Sleep disturbance;
     e. Observable psychomotor agitation or retardation;
     f. Decreased energy;
     g. Feelings of guilt or worthlessness;
     h. Difficulty concentrating or thinking; or
     i. Thoughts of death or suicide.
  2. Bipolar disorder, characterized by <u>three</u> or more of the following:
     a. Pressured speech;
     b. Flight of ideas;
     c. Inflated self-esteem;

   d. Decreased need for sleep;
   e. Distractibility;
   f. Involvement in activities that have a high
    probability of painful consequences that are
    not recognized; or
   g. Increase in goal-directed activity or
    psychomotor agitation.

AND

**B. Extreme limitation[1] of one, or marked limitation[2] of
two, of the following areas of mental functioning
(see 12.00F):**
  1. Understand, remember, or apply information
   (see 12.00E1).
  2. Interact with others (see 12.00E2).
  3. Concentrate, persist, or maintain pace (see 12.00E3).
  4. Adapt or manage oneself (see 12.00E4).

OR

**C. Your mental disorder in this listing category is "serious
and persistent;" that is, you have a medically
documented history of the existence of the disorder
over a period of at least 2 years, and there is evidence
of both:**
  1. Medical treatment, mental health therapy,
   psychosocial support(s), or a highly structured
   setting(s) that is ongoing and that diminishes the
   symptoms and signs of your mental disorder
   (see 12.00G2b); and
  2. Marginal adjustment, that is, you have minimal
   capacity to adapt to changes in your environment or
   to demands that are not already part of your daily life
   (see 12.00G2c).

---

[1] An extreme limitation is the inability to function in this area independently,
appropriately or effectively, and on a sustained basis.  12.00F
[2] A marked limitation involves seriously limited ability to function in this area
independently, appropriately, effectively, and on a sustained basis.  Id.

20 CFR pt. 404, Subpt. P, Appx. 1, § 12.04.  The impairments considered under Listing § 12.04 must be in existence for a continuous period of at least twelve months.  20 CFR § 404.1509.

Mr. Jensen does not specifically argue that the ALJ improperly determined that his impairments do not meet the listing requirements of §§ 12.04 or 12.06.  Rather, Mr. Jensen's dispute is "with how the ALJ arrived at [the finding of a specific RFC]" in reference to the "weight to be given to medical evidence from a treating source."  (Doc. 23 at p. 15).  Regardless, even if Mr. Jensen is contesting the ALJ's finding as to the listing requirement in Step Three, the issue "is not whether substantial evidence exists to reverse the ALJ." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010).  Instead, the court determines "whether substantial evidence supports the ALJ's decision." Id. Here, substantial evidence supports the ALJ's decision that Mr. Jensen does not meet Listing § 12.04's requirements.

As it pertains to Listing § 12.04, the listing is satisfied by either: A and B; or A and C.  The ALJ determined that the "Paragraph B" and "Paragraph C" criteria were not satisfied, making Mr. Jensen ineligible to meet the § 12.04 listing criteria.  (AR at p. 12-14).

<u>Paragraph B Criteria</u>

In determining that the Paragraph B criteria was not met, the ALJ first determined that Mr. Jensen had a mild limitation as it pertained to "understanding, remembering, or applying information."  (AR at p. 13). Although Mr. Jensen reported having poor memory and requiring assistance

with preparing meals and managing finances, medications, and medical appointments, the ALJ relied on records from office visits which described his memory as "intact." Id.

Substantial evidence supports the ALJ's finding on this point. Mr. Jensen's treating providers have opined that he is not fit for employment and cannot concentrate on work-related tasks. Despite this opinion, Nurse Rowe has consistently stated in her psychiatric notes that Mr. Jensen's thought process is intact, his memory is intact for recent and remote events, and his concentration is good. Id. at p. 557, 560, 565, 569, 570-71, 601, 603, 605, 651, 734, 741, 748, 762-63, 772. Additionally, Dr. Pesce and Nurse Rowe have described Mr. Jensen as having good attention and concentration levels and his thought process to be "normal and well-organized". Id. at p. 570-75. Dr. Pesce, who was initially the primary treating physician for Mr. Jensen, also consistently described him as having "no memory problems" and "no difficulties with his concentration or attention" dating back to 2013. Id.

The ALJ determined Mr. Jensen had a moderate limitation in terms with interacting with others. Id. at p. 13. Although Mr. Jensen reported self-isolation and avoidance of interacting with others, the ALJ noted he was routinely described as pleasant and cooperative during office visits and admitted to having friends, playing on a dart league, and shopping in stores. Id. Substantial evidence also supports the ALJ's finding on this point. During the relevant time frame, Mr. Jensen has repeatedly received positive marks over the course of his treatment by those treating him. See e.g., id. at p. 557-

60 (noting Mr. Jensen engages in conversation quite easily, has appropriate mood and affect, was pleasant to visit with, and makes good eye-contact during conversation). See id. at p. 560, 565, 567, 569, 571, 858, 605, 723-26, 730, 739, 748, 762, 770, 772, 778. See also id. at p. 731 (noting Mr. Jensen smiled and laughed during the entire session in 2016, and that his mother, father, and uncle stopped in with him). Additionally, in 2013, although not noted by the ALJ, Mr. Jensen testified that he had parent teacher conferences with his son's teachers to discuss how to help his son who was failing multiple classes. Id. at p. 37. Such an interaction goes beyond mere superficial, public interaction and involves one-on-one interaction to discuss sensitive subject-matter.

Furthermore, it is not insignificant that Mr. Jensen is able to shop, unaccompanied, twice a week for groceries at a public store and to participate in a weekly dark league. Id. at p. 34. Even if the team members on his dart league are comprised of his family members, dart leagues involve competing against other teams based on rotating schedules. In fact, the evidence supports that Mr. Jensen has made progress in the area of interacting with others. At his hearing in 2013, Mr. Jensen testified that he had been playing darts once a week for four or five months, but that his involvement ended because he "didn't want to be around other people." (AR at p. 47-48). However, at his hearing in 2017, Mr. Jensen testified that he was once again involved in shooting darts on Wednesday evenings. Id. at p. 97. In 2017, Mr.

Jensen's medical reports also stated "[d]art league is getting ready to start and [he] is looking forward to this." Id. at p. 766.

The ALJ determined Mr. Jensen has moderate limitation with regards to concentrating, persisting, or maintaining pace. Id. at p. 13. Although Mr. Jensen self-reported poor concentration and issues completing tasks, the ALJ noted he was routinely described as displaying intact concentration and focus during office visits. Id. Substantial evidence supports the ALJ's finding on this point. As noted *supra*, Mr. Jensen's treating providers consistently described him as having good attention and concentration levels, coupled with a normal and well-organized thought process.

Finally, with regards to the Paragraph B criteria, the ALJ determined Mr. Jensen had mild limitation with regards to adapting or managing oneself. In coming to this conclusion, the ALJ relied on the fact that Mr. Jensen lives on his own and was routinely described as having adequate hygiene and grooming, along with the ability to care for his own needs and the needs of his pets. Substantial evidence also supports the ALJ's finding on this point. As noted *supra*, Mr. Jensen's mood and affect was frequently noted as "appropriate" in notes by his treating providers. It is uncontroverted in the record that Mr. Jensen lives on his own, albeit with support from his parents. Id. at p. 75. Additionally, during the relevant time period, Mr. Jensen was able to care for the needs of three cats in his home. (Doc. 23 at p. 3).

Furthermore, although not noted by the ALJ, it is no insignificant matter that, in addition to caring for himself and three cats, Mr. Jensen was at times

the primary caregiver for his son over a period of at least four years.  Cf. (AR at p. 594) (noting Mr. Jensen's youngest son was fourteen years old and living with Mr. Jensen) with id. at p. 36-37 (noting the son was sixteen years old and living with Mr. Jensen who clothed, fed, and did laundry for the son); with id. at p. 87 (noting Mr. Jensen's son was almost eighteen years old and still living under Mr. Jensen's care).  While there is evidence that Mr. Jensen had concerns with regards to disciplining his son, there is no indication that Mr. Jensen's son was ever forcibly removed from his care by any child protection agency.  Accordingly, there is substantial evidence to support the ALJ's finding that Mr. Jensen does not meet the Paragraph B criteria under § 12.04's Listing.

Paragraph C Criteria

In determining that the Paragraph C criteria was not met, the ALJ determined that there was not sufficient evidence to support the existence of a disorder over a period of at least two years, and evidence of *both*: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and (2) marginal adjustment, that is, minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.  As with Paragraph B, substantial evidence supports the ALJ's finding in regards to the Paragraph C criteria.

The ALJ does not specify which portion of the Paragraph C criteria is not met, nor does the ALJ specify which facts from the record support this

conclusion. However, after full review of the record, the court finds that even if Mr. Jensen could demonstrate he has had a disorder for over two years and has mental health therapy that is ongoing and diminishes the symptoms and signs of the mental disorder, he cannot satisfy the final prong of the Paragraph C Criteria. Substantial evidence supports the finding that Mr. Jensen does not meet the criteria to demonstrate marginal adjustment, *i.e.* minimal capacity to adapt to changes in his environment or demands that are not already apart of his daily life.

Medical records from Mr. Jensen's treating providers consistently demonstrate him having adjusted well and showing a stable prognosis with limited changes to dosage in medications. Id. at p. 557, 559-60, 564-65, 567-70, 575-79, 581-86, 590, 601, 603-06, 651, 734-35, 740, 743, 748, 750, 752, 762-63, 768-70, 776, 778. Additionally, Mr. Jensen often reports feeling in control of his symptoms and denying mania or depressive symptoms. Id. Despite Nurse Rowe's adamant psychiatric notes that Mr. Jensen is disabled and not fit for employment, what is perhaps most supporting to the contrary, is derived from her own notes immediately following such statements: "At this point, I feel Robert is functioning the best that he has since I've known him." Id. at p. 605. Additionally, Mr. Jensen's original treating physician, Dr. Pesce, remarked back in 2013: "Although the patient is stable and compliant, I have some concerns about the fact that he is not working, has too much free time and gets bored. I am encouraging him to find some activity." Id. at p. 575.

Accordingly, there is substantial evidence to support the ALJ's finding that Mr.

Jensen does not meet the Paragraph C criteria under § 12.04's Listing.

The qualifications for Listing 12.06 are as follows:

**12.06 Anxiety and obsessive-compulsive disorders (**<u>see</u> **12.00B5), satisfied by A and B, or A and C:**

**A.** **Medical documentation of the requirements of paragraph 1, 2, or 3:**
   1. Anxiety disorder, characterized by <u>three</u> or more of the following;
      a. Restlessness;
      b. Easily fatigued;
      c. Difficulty concentrating;
      d. Irritability;
      e. Muscle tension; or
      f. Sleep disturbance.
   2. Panic disorder or agoraphobia, characterized by <u>one</u> or both:
      a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
      b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).
   3. Obsessive-compulsive disorder, characterized by <u>one</u> or both:
      a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
      b. Repetitive behaviors aimed at reducing anxiety.

<u>AND</u>

**B.** **Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (**<u>see</u> **12.00F):**
   1. Understand, remember, or apply information (<u>see</u> 12.00E1).
   2. Interact with others (<u>see</u> 12.00E2).
   3. Concentrate, persist, or maintain pace (<u>see</u> 12.00E3).
   4. Adapt or manage oneself (<u>see</u> 12.00E4).

<u>OR</u>

**C.** **Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:**
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 CFR pt. 404, Subpt. P, Appx. 1, § 12.06. The impairments considered under Listing § 12.06 must also be in existence for a continuous period of at least twelve months. 20 CFR § 404.1509. Like Listing § 12.04, Listing § 12.06, is satisfied by either: A and B; or A and C. Because the Paragraph B and C criteria are identical to the criteria for Paragraph B and C of Listing § 12.04, the ALJ properly determined Mr. Jensen was ineligible to meeting the listing. The court will not repeat the analysis from Listing § 12.04, as it is identically applicable to the analysis for Listing § 12.06.

The ALJ and this court need not determine if the Paragraph A criteria are met for either listing, because without the Paragraph B or C criteria, Mr. Jensen cannot meet either listing. Because this court's role is limited to determining whether substantial evidence *supports* the ALJ's decision, and because this court has held *supra* that the record does in fact provide such support for the ALJ's decision, Mr. Jensen does not meet the listing criteria for either Listing § 12.04 or § 12.06.

## STEP FOUR

Before considering step four of the evaluation process, the ALJ must determine a claimant's residual functioning capacity ("RFC"). 20 CFR §§ 404.1520(a)(4)(iv) & 404.1545. RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments. 20 CFR § 404.1545(a)(1). In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe. 20 CFR § 404.1545(e). All of the relevant medical and non-medical evidence in the record must be considered. 20 CFR § 404.1513.

In determining a claimant's RFC, the ALJ considers any medical opinions and claimant's degree of functional limitation. 20 CFR § 404.1545(a)(1), (4). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis, and prognosis, and what [claimant] can still do despite the impairment(s), and . . . physical or mental restrictions." 20 CFR § 404.1527(b). In weighing medical opinion evidence, the ALJ must consider the factors set forth in the regulations. 20 CFR § 404.1527(c). An ALJ is not required to discuss every piece of evidence, and his failure to cite specific evidence does not mean he did not consider it. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

The next step in the analysis of mental impairments requires a determination as to the "degree of functional limitation resulting from the impairment(s)." 20 CFR § 404.1520a(b)(2). Rating of functional limitation

evaluates the extent to which impairment "interferes with [claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 CFR § 404.1520a(c)(2).

"The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard." Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (referencing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)). "Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and citations omitted). The court will not disturb the decision of an ALJ who seriously considers but for good reason expressly discredits a claimant's subjective complaints. See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

The ALJ determined Mr. Jensen has the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to performing simple, routine tasks and having occasional and superficial contact with the public and co-workers." (AR at p. 14). As it pertains to Step Four, the ALJ determined Mr. Jensen is unable to perform any past relevant work. Id. at p. 18. Mr. Jensen argues the following as it pertains to the calculation of the RFC: (1) the ALJ failed to give Dr. Pesce, the treating physician's, opinions the greatest weight; (2) the ALJ failed to

incorporate the opinions of Dr. Pesce and Nurse Rowe from various time periods into the hypothetical question posed to the VE; (3) the ALJ failed to incorporate all of the moderately limited areas of function noted by Dr. Pesce; and (4) the ALJ did not properly apply Polaski when determining Mr. Jensen's credibility. (Doc. 23 at p. 13). The first three contentions revolve around the weight given to the opinions of Mr. Jensen's treating providers.

## Dr. Pesce and Nurse Rowe's Opinions

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)). See also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (providing that because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of the claimant's ability to function in the workplace, but the ALJ may consider nonmedical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence."). The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.'" Id. at 803 (quoting Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

Medical opinions are considered evidence which the ALJ will consider in determining whether a claimant is disabled, the extent of the disability, and the claimant's RFC. See 20 C.F.R. § 416.927(a)(2). All medical opinions are

evaluated according to the same criteria, namely:

> –whether the opinion is consistent with other evidence in the record;

> –whether the opinion is internally consistent;

> –whether the person giving the medical opinion examined the claimant;

> –whether the person giving the medical opinion treated the claimant;

> –the length of the treating relationship;

> –the frequency of examinations performed;

> –whether the opinion is supported by relevant evidence, especially medical signs and laboratory findings;

> –the degree to which a nonexamining or nontreating physician provides supporting explanations for their opinions and the degree to which these opinions consider all the pertinent evidence about the claim;

> –whether the opinion is rendered by a specialist about medical issues related to his or her area of specialty; and

> –whether any other factors exist to support or contradict the opinion.

See 20 C.F.R. § 416.927(a)-(f); Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007).

"A treating physician's opinion is given controlling weight 'if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (quoting Reed, 399 F.3d at 920); 20 C.F.R. § 416.927(d)(2). While entitled to special weight, "[a] treating physician's opinion 'do[es] not automatically control, since the record must be evaluated as a whole.'" Reed, 399 F.3d at 920 (quoting Bentley v. Shalala, 52

F.3d 784, 786 (8th Cir. 1995)).  See also House, 500 F.3d at 744.  The length of the treating relationship and the frequency of examinations of the claimant are also factors to consider when determining the weight to give a treating physician's opinion.  20 C.F.R. § 416.927(d)(2)(I).

One factor that can support an ALJ's decision to discount or even disregard a treating physician's opinion is "if 'the treating physician evidence is itself inconsistent.'"  House, 500 F.3d at 744 (quoting Bentley, 52 F.3d at 786). "The opinion of an acceptable medical source who has examined a claimant is entitled to more weight than the opinion of a source who has not examined a claimant."  Lacroix, 465 F.3d at 888 (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)), Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003), and Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)).

When opinions of consulting physicians conflict with opinions of treating physicians, the ALJ must resolve the conflict.  Wagner, 499 F.3d at 849. Generally, the opinions of non-examining, consulting physicians, standing alone, do not constitute "substantial evidence" upon the record as a whole, especially when they are contradicted by the treating physician's medical opinion.  Id.; Harvey v. Barnhart, 368 F.3d 1013, 1016 (8th Cir. 2004) (citing Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999)).  However, where opinions of non-examining, consulting physicians along with other evidence in the record form the basis for the ALJ's RFC determination, such a conclusion may be supported by substantial evidence.  Harvey, 368 F.3d at 1016.

Mr. Jensen's argument that the ALJ failed to find the "uncontroverted medical opinions" of Dr. Pesce to have the greatest weight is without merit. The ALJ recognized that Mr. Jensen has a history of bipolar disorder, and accepted Dr. Pesce's opinion that Mr. Jensen is moderately limited due to his mental health symptoms. (AR at p. 15). However, the ALJ determined Dr. Pesce's opinion that Mr. Jensen is markedly limited in any work-related activities, or that he would be unable to perform more than three days of work a week, was not consistent with the medical evidence. Id.

While it would be improper for the ALJ to rely on the opinion of a non-examining consulting physician to the exclusion of the conflicting opinions of a treating physician, in this case, the ALJ did not rely solely on the non-treating physicians' opinions to make his formulations. See Jenkins 196 F.3d at 925. Instead, the ALJ considered the record as a whole, particularly those medical reports generated by Mr. Jensen's own treating providers. See (AR at p. 15-18) (stating that Dr. Pesce and Nurse Rowe's vague conclusions that Mr. Jensen was unable to work were inconsistent with their own notes to the contrary that Mr. Jensen was stable and responding well to treatment). See also Harvey, 368 F.3d at 1016.

As stated previously, although an examining physician's opinions are generally entitled to substantial weight, the ALJ may properly disregard those opinions where the evidence is inconsistent with the treating physician's evidence as a whole or with other substantial evidence. House, 500 F.3d at 744 (quoting Bentley, 52 F.3d at 786). This court finds the record as a whole,

including the medical records by Mr. Jensen's treating providers, provided

substantial evidence to support the ALJ's decision to discredit portions of the

opinions of Dr. Pesce and Nurse Rowe that were inconsistent with their medical

records that Mr. Jensen was stable, responding well to treatment, and

repeatedly denied suffering from depression or related mental health issues for

lengthy periods of time.

<u>Mr. Jensen's Credibility</u>

Mr. Jensen argues in his final contention regarding the calculation of the

RFC that <u>Polaski</u> was not properly applied when determining his credibility.

Pursuant to <u>Polaski</u>,

> The adjudicator must give full consideration to all of the evidence
> presented relating to subjective complaints, including the claimant's
> prior work record, and observations by third parties and treating
> and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints *solely* on the basis of personal observations.
> Subjective complaints may be discounted if there are
> inconsistencies in the evidence as a whole.

<u>Polaski</u>, 739 F.2d at 1322.

For the following reasons, the court concludes the ALJ properly

considered Mr. Jensen's subjective complaints and discredited those

complaints for good reasons consistent with <u>Polaski</u>. Therefore, the court will

defer to the ALJ's finding that Mr. Jensen was not credible.

The ALJ discussed in depth Mr. Jensen's medical records and contrasted that objective evidence with Mr. Jensen's subjective complaints of limitations. (AR at p. 14–18). The ALJ concluded that Mr. Jensen's "mental health symptoms would impact his ability to perform work-related activities . . . ." Id. at p. 15. However, the ALJ determined that "extensive review of the medical evidence does not suggest that [Mr. Jensen's] mental health impairments are as severe as he alleged." Id.

In discrediting Mr. Jensen's statements, the ALJ found it significant that medical records showed Mr. Jensen's "condition was stable on his medication regimen and that his impairments had improved." Id. Further, Mr. Jensen's own treatment provider, Nurse Rowe, opined in February 2016, that Mr. Jensen was functioning the best he had since she had known him. Id. at p. 605. Finally, the ALJ found Mr. Jensen's behavior inconsistent with his alleged limitations: "Although [Mr. Jensen's] parents manage his medications and finances, he lives on his own and thus is able to manage the demands of a household. He can shop in stores, care for pets, and perform his household chores. He also is part of a dart league and is able to shop on his own." Id. at p. 17. See Hogan v. Apfel, 239 F.3d 958 (8th Cir. 2001) (holding there existed sufficiently good reason to defer to the ALJ's credibility assessment when a claimant engaged in household activities inconsistent with her disabilities).

Good reason exists to defer to the ALJ's determination on credibility not just because Mr. Jensen's activities are inconsistent with his purported level of severity regarding his mental health impairments. Doubt is further cast on Mr.

Jensen's credibility in light of the circumstances and testimony that he has quit every job he has ever acquired. In <u>Hogan</u>, in addition to relying on inconsistencies between the claimant's activities and purported level of disability, the Eighth Circuit further determined the closeness in time between claimant being reprimand on the job to the time the claimant ceased to work cast doubt on her assertion that she quit her job because of pain resulting from her disability. <u>Id.</u> Like in <u>Hogan</u>, this court finds the ALJ's determination regarding Mr. Jensen's lack of credibility to be further supported by the fact that Mr. Jensen voluntarily quit the last job he held right after he was reprimanded by the owner of lumber yard. <u>See</u> <u>id.</u> at p. 82-83 (providing testimony that Mr. Jensen "blew up and quit" at his final place of employment right after he was yelled at by his supervisor for a single and isolated event). <u>See</u> <u>also</u> <u>id.</u> at p. 79 (providing Mr. Jensen's testimony where he admitted he had quit every job he has ever had and had never been fired).

The ALJ noted some weight was given to the testimony of Mary Jensen, Mr. Jensen's mother, as the testimony provided insight into Mr. Jensen's daily living ability. <u>Id.</u> "However, the overall evidence supports [Mr. Jensen's] mental health symptoms have remained generally stable with compliance to medication, thus, supporting that he would be able to sustain performance of unskilled work within the [RFC] above." <u>Id.</u> at p. 18. The ALJ ultimately gave more weight to the assessments of the state agency consultants "as they are consistent with the overall record." <u>Id.</u> <u>See</u> <u>also</u> <u>id.</u> at p. 202-206 (providing Dr. Jerry Buchkoski, a state agency consultant's, RFC assessment); <u>id.</u> at p.

243-247 (providing Dr. Lisa Renner, a state agency consultant's, RFC assessment).

After reviewing the record, the court finds no independent medical support for Mr. Jensen's assertion that the ALJ improperly discredited his testimony. The medical records conflict with Mr. Jensen's subjective complaints. The court finds that the ALJ seriously considered Mr. Jensen's subjective complaints, but for good reason expressly discredited those complaints. See Haggard, 175 F.3d at 594. The court, therefore, must defer to the ALJ's credibility determination. Schultz, 479 F.3d at 983. For these reasons, the ALJ was not required to rely on Mr. Jensen's statements that he was incapable of any work.

**STEP FIVE**

At step five, the ALJ determines whether the claimant is able to do any other work considering his RFC, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. 20 CFR § 404.1520(a)(4)(v). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001).

In this case, the ALJ concluded that Mr. Jensen was not disabled because he retained the RFC to make a successful adjustment to jobs existing in significant numbers in the national economy. (AR at p. 19-20). Where the

claimant's limitations are exertional (physical) in nature, the burden may be properly met by testimony from a vocational expert or by referring to the medical-vocational guidelines.  Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001).  "However, when a claimant is limited by a nonexertional impairment, such as pain or mental incapacity, the Commissioner may not rely on the Guidelines and must instead present testimony from a vocational expert to support a determination of no disability."  Holley v. Massanari, 253 F.3d 1088, 1093 (8th Cir. 2001); accord Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006).  "For a vocational expert's opinion to be relevant, an ALJ must accurately characterize a claimant's medical conditions in hypothetical questions posed to the vocational expert."  Harvey, 368 F.3d at 1016 (citing Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994).

Mr. Jensen claims that the ALJ's hypothetical was inadequate because it did not incorporate the opinions of Dr. Pesce as it relates to Mr. Jensen's mental impairments.  (Doc. 23 at p. 21-23).  Here, the ALJ asked the VE, Dr. Perry, to assume the existence of a worker of Mr. Jensen's age, education and past work experience who has no exertional limitation but is limited to simple, routine tasks and occasional and superficial contact with coworkers and the public.  (AR at p. 42).  Dr. Perry testified such a person could do the past work of a lumber yard laborer, but not the convenience store clerk or meat cutter position.  Dr. Perry further testified that other employment, including work as a janitor, hand packager, and dish washer, would all be appropriate for an

individual who met the criteria of the hypothetical posed and were available in significant numbers within the national economy. Id. at p. 42-43.

The ALJ continued with the hypothetical, asking Dr. Perry to assume regardless of any exertional or non-exertional impairment, if an individual is unable to concentrate and maintain focus for periods of time throughout the workday, and as such, would be off task or unproductive intermittently and in varying lengths of time, but in the aggregate would be off tasks more than one hour per day. Id. at p. 43. Dr. Perry testified there would be no jobs for such an individual because they would have more off task behavior than is tolerated in competitive work. Id.

In addition to the ALJ's questioning, counsel for Mr. Jensen inquired of Dr. Perry by posing a hypothetical that included limitations consistent with Dr. Pesce's opinions. Id. at p. 43-44. Dr. Perry testified such a person would be incapable of past relevant work or any other work in the national economy. Id. Mr. Jensen's counsel also posed a hypothetical that included limitations consistent with Nurse Rowe's opinions. Id. Again, Dr. Perry testified there would be no employment opportunities available for such a person. Id.

The ALJ's hypothetical question comports with his findings and his discussion of Mr. Jensen, Dr. Pesce, and Nurse Rowe's limited credibility. Therefore, this court finds unconvincing Mr. Jensen's argument that the hypothetical was lacking. Mr. Jensen has failed to demonstrate that the ALJ mischaracterized his limitations and conditions. An ALJ's hypothetical will not be considered inadequate where the ALJ omits those aspects of the claimant's

subjective complaints that the ALJ considers non-credible.  Harvey, 368 F.3d at 1016-17.  See also Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985) (stating that the ALJ's hypothetical is sufficient if it sets forth the impairments accepted as true by him).

Furthermore, "treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant cannot be gainfully employed." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). The ALJ properly discredited the vague opinions of Mr. Jensen's treating care providers that were not consistent with the record.  Vague opinions, such as those that summarily opine a claimant cannot work are merely "opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner]." Id. (internal quotation omitted).  Here, the ALJ's hypothetical adequately reflected the impairments that were consistent with the record as a whole.

## ORDER

Based on the above analysis, it is hereby

ORDERED that Claimant's appeal of the decision of the Commissioner (Doc. 1) is denied.  It is further

ORDERED that the decision of the Commissioner dated February 27, 2018, is affirmed.

DATED this 31st day of March, 2020.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge